```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF VIRGINIA
                       Alexandria Division

UNITED STATES OF AMERICA,         )
                                  )
         Plaintiff,               )   CR. NO. 10-249
                                  )
    vs.                           )
                                  )
NATHAN DANIEL LARSON,             )
                                  )
                Defendant.        )
                                  )
```

SUPERVISORY RELEASE VIOLATION

August 20, 2010

---

BEFORE:    THE HONORABLE GERALD BRUCE LEE
           UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE GOVERNMENT: OFFICE OF THE UNITED STATES ATTORNEY
                BY: MICHAEL GACHES, ESQ.
                    MICHAEL STALWART, ESQ.
                2100 Jamieson Ave.
                Alexandria, Virginia  22314


FOR THE DEFENDANT: OFFICE OF THE FEDERAL PUBLIC DEFENDER
                BY: BROOKE RUPERT, ESQ.



---

OFFICIAL COURT REPORTER: RENECIA A. WILSON, RMR,CRR
                         U.S. District Court
                         401 Courthouse Square
                         Alexandria, VA  22314
                         (703)501-1580


RENECIA A. SMITH-WILSON, RMR, CRR

```
 1               (Thereupon, the following was heard in open
 2   court at 10:08 a.m.)
 3               THE CLERK:  1:10 criminal 249, United States
 4   versus Nathan Daniel Larson.
 5               MR. GACHES:  Good morning, Your Honor.
 6   Michael Gaches and Michael Stalwark on behalf of the
 7   United States.
 8               THE COURT:  Can you spell your last name for
 9   me.
10               MR. GACHES:  Sure, G-A-C-H-E-S.
11               THE COURT:  All right, good morning.
12               MS. RUPERT:  Good morning, Your Honor.
13   Brooke Rupert.
14               I've been appointed as stand-by counsel for
15   Mr. Larson who is now present.
16               THE COURT:  Good morning.
17               Good morning, Mr. Larson.
18               MR. LARSON:  Good morning.
19               THE COURT:  Mr. Larson, I understand you're
20   representing yourself in this case; is that right?
21               MR. LARSON:  Yes.
22               THE COURT:  All right.  If you'd come to the
23   podium, please, with the marshal.
24               Mr. Larson, have you had a chance to review
25   the supervisory release?
```

```
 1                 MR. LARSON:  The what?
 2                 THE COURT:  Have you had a chance to review
 3     the petition charging you with violating the terms and
 4     conditions of supervised release?
 5                 MR. LARSON:  Yes.
 6                 THE COURT:  Do you admit or deny the
 7     violations?
 8                 MR. LARSON:  Yes.
 9                 THE COURT:  Do you admit that you violated
10     the terms and conditions?
11                 MR. LARSON:  Yes.
12                 THE COURT:  All right.  Do you desire to put
13     on any evidence?
14                 MR. LARSON:  No.
15                 THE COURT:  All right.  Let me hear from the
16     government.  You can have a seat.
17                 MR. GACHES:  Your Honor, as a preliminary
18     matter just to remind the Court that the parties have
19     briefed the Court on the issue of competency, and I
20     didn't know if the Court was inclined to --
21                 THE COURT:  Yes, well, let's take that up
22     right now.  He just stood up and said he admitted the
23     violation and he's read it.  What more do you think he
24     needs to do to establish competency?
25                 MR. GACHES:  Well, Your Honor, frankly, not
```

1  much. The reason the government filed its motion was
2  based on the content of the letter that the Court's
3  aware of and also his behavior during his preliminary
4  hearing, primarily his initial appearance.
5          But that said, we just wanted to be certain
6  that he was competent and that the Court was comfortable
7  that he was competent before we proceeded.
8          THE COURT: Well, the letter -- in your
9  view, does the letter acknowledge that he's involved in
10 a legal proceeding?
11         MR. GACHES: I'm sorry.
12         THE COURT: Does the letter that has started
13 all these proceedings, does it acknowledge that he's
14 involved in legal proceedings?
15         MR. GACHES: Does it acknowledge that he's
16 involved in legal proceedings? I would agree that it
17 does, yes, Your Honor.
18         THE COURT: And it seems to me the letter
19 also acknowledges that he is very familiar with the
20 conditions of the supervisory release.
21         MR. GACHES: I would agree, Your Honor, yes.
22         THE COURT: All right. Then, I guess -- I
23 shouldn't say I guess.
24         My judgment is that the letter -- and my
25 understanding that there was a hearing held before the

1   magistrate where he was questioned about whether or not
2   he wanted to represent himself.  And is it the
3   government's view that the magistrate judge conducted a
4   sufficient *Faretta* inquiry to make sure that he was
5   prepared to represent himself?
6           MR. GACHES:  Yes, Your Honor, absolutely.
7           THE COURT:  I'm prepared to go forward
8   without anything more.
9           But Ms. Rupert or Mr. Larson, do you want a
10  competency evaluation?  Do you think it would help us
11  here?
12          MS. RUPERT:  Your Honor, yesterday I filed a
13  motion or an opposition to the government's motion.  We
14  believe that Mr. Larson is competent to proceed and do
15  not request a hearing --
16          THE COURT:  All right.
17          MS. RUPERT:  -- at that time.
18          THE COURT:  Then I'm going to deny the
19  motion for a competency evaluation.  It appears from the
20  record and the submission that Mr. Larson understands
21  the nature and the consequences of his actions and is
22  fully mentally capable of proceeding as his own counsel.
23          MR. GACHES: Okay.  Thank you, Your Honor.
24  We will primarily rest on our papers.  I think the
25  violation speaks for itself, the nature of the

1  violations, the dangerousness of the violations, unless
2  the Court has any specific questions for the government.
3           THE COURT:  Well, what is your judgment
4  about the risk, if any, if Mr. Larson does not comply
5  with the terms and conditions of supervisory release?
6  What risk or danger does he pose to anyone, if at all?
7           MR. GACHES:  That, of course, is the
8  ultimate question, Your Honor.  It's difficult to
9  determine with any degree of certainty based solely on
10 the letter.  I'm not familiar personally with any
11 particular actions that he's engaged in in the past that
12 would indicate, you know, trouble in the future, other
13 than the underlying conviction that we're dealing with,
14 making threats against the President of the United
15 States.
16          I think that the letter itself, I think the
17 language of the letter is very clear.  I think it's very
18 intent, and I think the words are very troubling.
19          And so as part of the government's
20 recommendation as to what the Court does in this case,
21 that's really why the Court -- the government, rather,
22 feels that the mental health evaluation and treatment
23 should be part of the Court's judgment today.
24          But certainly, a period of incarceration
25 that the Court deems appropriate, not only to protect

1  the community and to insure that Mr. Larson understands
2  what's going on here, understands that it's his
3  obligation to follow the laws of the United States and
4  follow the orders of this Court, but to also punish him
5  for his flagrant disregard for the judgment that was
6  entered against him and the terms of that judgment and
7  the opportunity that he was given to be a member of the
8  community and abide by some simple rules.
9             THE COURT:  All right.
10            MR. GACHES:  Thank you, Your Honor.
11            THE COURT:  Mr. Larson, if you'd come to the
12 podium, sir.
13            Mr. Larson, how long were you in federal
14 prison?
15            MR. LARSON:  Fourteen months.
16            THE COURT:  All right.  Is there any
17 statement you want to make in your own behalf?
18            MR. LARSON:  Could I talk to my counsel
19 briefly?
20            THE COURT:  Certainly.
21            MS. RUPERT:  Your Honor, Mr. Larson asked me
22 to address two points raised in the government's
23 position.
24            First, we believe that calculation of the
25 guideline range that the government suggested is

1  inaccurate.  The suggested guideline range calculation
2  was 5 to 11 months.
3            We believe that the suggested range should
4  be 4 to 10 months given that Mr. Larson at the time of
5  his sentencing was a Criminal History Category 2 and
6  that the application note to the guidelines suggest
7  that -- that the criminal history category should be
8  taken as of the time of sentencing on the underlying
9  offense.
10           The second point that Mr. Larson would like
11 me to raise is that he objects to mental health
12 treatment as it applies to medication.  He has no
13 objection to mental health counseling.
14           THE COURT:  All right.  Mr. Larson, if you'd
15 stand, please.
16           Mr. Larson, it's the judgment of the Court
17 that you have violated the terms and conditions of your
18 supervised release.  And because you have made it
19 crystal clear in your letter to the Court that you have
20 absolutely no intent to ever comply with any of the
21 terms and conditions of supervised release and because
22 you have in your letter indicated your plan, it seems to
23 me -- it says "From now on, I will possess firearms,
24 ammunitions, destructive devices and other dangerous
25 weapons whenever I want to", and your statement about

```
 1   "target shooting cutouts of federal politicians, federal
 2   judges, federal prosecutors and federal agents is just
 3   me engaging in target practice", it seems to me that you
 4   have a clear understanding of where you are and what's
 5   taking place.
 6              And because we don't have the ability to
 7   supervise you and you do not plan to ever cooperate with
 8   us, it's the judgment of the Court that you be committed
 9   to serve a term of two years in the federal prison,
10   followed by a three-year term of supervised release.
11              I remand you to custody at that time.  Thank
12   you.
13              We'll take about a ten-minute recess and
14   come back and start civil.
15              Thank you.
16              (Proceedings concluded at 10:17 a.m.)
17
18
19
20
21
22
23
24
25
```

```
 1                CERTIFICATE OF REPORTER
 2
 3            I, Renecia Wilson, an official court
 4   reporter for the United State District Court of
 5   Virginia, Alexandria Division, do hereby certify that I
 6   reported by machine shorthand, in my official capacity,
 7   the proceedings had upon the violation of supervisory
 8   release in the case of United States of America vs.
 9   Nathan Daniel Larson.
10            I further certify that I was authorized and
11   did report by stenotype the proceedings and evidence in
12   said hearing, and that the foregoing pages, numbered 1
13   to 9, inclusive, constitute the official transcript of
14   said proceedings as taken from my shorthand notes.
15            IN WITNESS WHEREOF, I have hereto
16   subscribed my name this 3rd day of November, 2010.
17
18                                   /s/
                              Renecia Wilson, RMR, CRR
19                            Official Court Reporter
20
21
22
23
24
25
```

RENECIA A. SMITH-WILSON, RMR, CRR