Prob 12A
(Mod. For E.VA 10/09)

## UNITED STATES DISTRICT COURT
## for the
## EASTERN DISTRICT OF VIRGINIA



FILED
NOV 3 0 2012
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

U.S.A. vs. Nathan Daniel Larson     Docket No. 1:10CR00249-001

### Petition on Supervised Release

COMES NOW Brent D. Keith, PROBATION OFFICER OF THE COURT, presenting an official report upon the conduct and attitude of Nathan Daniel Larson, who was placed on supervision by the Honorable Philip A. Brimmer sitting in the Court at the District of Colorado, on the 9th day of October, 2009, who fixed the period of supervision at 3 years, and imposed the general terms and conditions heretofore adopted by the Court and also imposed special conditions and terms as follows:

See Page 2

**RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:**
See Attachment(s)

**PRAYING THAT THE COURT WILL ORDER** a warrant to be issued directing that the offender appear before the Court to show cause why supervision should not be revoked.

**Bond Recommendation: None**

ORDER OF COURT

Considered and ordered this 30th day of Nov, 2012 and ordered filed and made a part of the records in the above case.
/s/
Gerald Bruce Lee
United States District Judge

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 11/29/12

Brent D. Keith
Senior U.S. Probation Officer

Place Fredericksburg, Virginia

TO CLERK'S OFFICE

**Petition on Supervised Release**
**Page 2**
**RE: Larson, Nathan Daniel**

OFFENSE: Threats Against the President of the United States, in violation of Title 18, U.S.C., Section 871(a).

SENTENCE: 16 months imprisonment, 3 years supervised release, and a $100 special assessment. Special conditions include: 1) the defendant shall participate in a program of mental health treatment, as approved by the probation officer, until such time as the defendant is released from the program by the probation officer. The defendant shall pay the cost of the treatment as directed by the probation officer. The Court authorizes the probation officer to release to the treatment agency all psychological reports and/or the presentence report for the continuity of treatment; 2) the defendant shall remain medication compliant and shall take all medications that are prescribed by his treating psychiatrist. The defendant shall cooperate with random blood tests as requested by his treating psychiatrist and/or supervising probation officer to ensure a therapeutic level of his prescribed medication is maintained; and, 3) the defendant shall not access and e-mail account without prior permission from the supervising probation officer.

The defendant was released from imprisonment, and began his original term of supervised release on February 9, 2010. On July 12, 2010, jurisdiction of the defendant's case was transferred to the Eastern District of Virginia based on the defendant's residence within same. On August 10, 2010, the probation office received a letter from the defendant, in which the defendant noted his intent to disobey any order of the Court and the probation office. The letter also contained statements that were overtly threatening in nature. Based on the content of the letter, the Court issued a warrant for the defendant's arrest on August 10, 2010. A petition on supervised release was subsequently filed on August 11, 2010, alleging that the defendant had failed to satisfactorily participate in mental health treatment, failed to report to the probation officer as directed, and failed to follow the instructions of the probation officer.

On August 20, 2010, the defendant appeared before the Court and was found in violation of the terms and conditions of his supervised release. The defendant's term of supervised release was revoked, and a 24 month term of imprisonment was imposed. The Court further ordered that the defendant serve a 3 year term of supervised release following his completion of the term of imprisonment. On September 8, 2010, the term of supervised release was amended to 1 year. It was additionally ordered that all of the previously imposed terms and conditions would remain in full force and effect.

**Petition on Supervised Release**
**Page 3**
**RE: Larson, Nathan Daniel**

ADJUSTMENT TO SUPERVISION:

The defendant completed his 24 month term of imprisonment, and began his current 1-year term of supervised release on June 12, 2012. While on supervision, the defendant has attended all required mental health evaluation and treatment sessions, tested negative for the use of illegal drugs, and maintained residence with his parents. The defendant has incurred no new criminal charges to date, and has not been required to obtain employment based on his mental health condition and need for continued treatment.

Despite these accomplishments, the defendant has struggled to adjust to supervision. On October 29, 2012, the defendant mailed a letter to his individual mental health therapist, expressing his concern over her decision to continue to question him about an offense he committed in 2003. The letter noted that if the offense continued to be addressed, he would consider committing "suicide by cop", or, by simply discontinuing treatment, which he noted would also lead to his incarceration. The defendant noted that to commit "suicide by cop", he would use a firearm to provoke a police officer to fire upon him. The defendant noted in the letter that he would like for the therapist to come to their next appointment prepared to tell him whether she would commit to not referencing the offense again. The defendant stated that if she did not provide him with an answer, he would "act accordingly".

Upon being advised of this letter by the defendant's therapist, this officer staffed the matter with the therapist, and consulted with Deputy U.S. Marshal Nick Proffitt. Following this staffing, it was concluded that this officer would attend the next scheduled session with the defendant and his therapist. On November 1, 2012, this officer met with the defendant and his therapist, and discussed the letter at length. The defendant advised that he was no longer suicidal, and did not have any intent to harm anyone. The defendant also advised that he did not have a firearm. The therapist concluded that the defendant was not suicidal, and that a civil commitment was not appropriate. Following this session, this officer contacted the defendant's mother and discussed the information contained in the letter. She confirmed that the defendant had advised her of the letter as well. She stated that there were no firearms in the home, and that the defendant told her that the plan to commit "suicide by cop" would have involved the use of a fake firearm. Since November 1, 2012, the defendant has continued to attend mental health treatment sessions. According to his therapist, the defendant is currently participating at a satisfactory level.

Although the defendant has shown an improvement in his willingness to cooperate with the mental health treatment program, he has failed to

Prob 12A
(Mod. For E.VA 10/09)

Petition on Supervised Release
Page 4
RE: **Larson, Nathan Daniel**

comply with all the conditions of his supervised release. Specifically, the defendant has attempted to submit correspondence to a convicted felon who is incarcerated at FCC Petersburg, and participated in a telephone conversation with another inmate at the same facility. Both of these inmates are incarcerated for child pornography offenses. The defendant has at no time requested permission from the probation officer to have contact with these individuals.

<u>VIOLATIONS</u>: The following violation is submitted for the Court's consideration.

**CONDITION 9:**         **YOU SHALL NOT ASSOCIATE WITH ANY PERSONS ENGAGED IN CRIMINAL ACTIVITY, AND SHALL NOT ASSOCIATE WITH ANY PERSON CONVICTED OF A FELONY UNLESS GRANTED PERMISSION TO DO SO BY THE PROBATION OFFICER.**

On November 26, 2012, this officer was contacted by Scott J. Bernardo, Special Investigative Technician with FCC Petersburg. Mr. Bernardo advised that the defendant had recently made an attempt to mail an inmate, Matthew Mercer-Kinser, a lengthy copy of an interview transcript, as well as some other documents. The interview transcript was based off an interview that the defendant conducted with this inmate while both parties were incarcerated together at FCC Petersburg. The transcript contained questions and answers related to such topics as pedophilia, other deviant sexual practices, assassination of government officials, and suicidal ideations. Also included in this packet was internet based articles rationalizing the benefits of pedophilia, and negating the harm of same.

Upon the request of this officer, Mr. Bernardo also identified that a telephone call occurred between Mr. Larson and another inmate at FCC Petersburg, Terry Hoff, on October 10, 2012. According to Mr. Bernardo, the conversation was approximately 14 minutes in length. During the conversation, Mr. Hoff talked with the defendant about conducting internet searches for females on his behalf. The defendant and Mr. Hoff also discussed an appointment the defendant had scheduled with a psychologist. The defendant and Mr. Hoff talked about how the defendant should lie to get through the next 8 months of supervision.

The defendant did not receive prior permission from this officer to have any form of contact with either inmate Matthew Mercer-Kinser or inmate Terry Hoff.


BDK/bjr