IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,              )       CR. NO. 10-249
                                )
    vs.                         )
                                )
NATHAN DANIEL LARSON,           )
                                )
            Defendant.          )
_____)


December 7, 2012


---


BEFORE:      THE HONORABLE GERALD BRUCE LEE
             UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE GOVERNMENT: OFFICE OF THE UNITED STATES ATTORNEY
                BY: CAROL THOMPSON, ESQ.



FOR THE DEFENDANT: OFFICE OF THE FEDERAL PUBLIC DEFENDER
                BY: BROOKE RUPERT, ESQ.



---


OFFICIAL COURT REPORTER: RENECIA A. WILSON, RMR,CRR
                         U.S. District Court
                         401 Courthouse Square
                         Alexandria, VA  22314
                         (703)501-1580

              (Thereupon, the following was heard in open
court at 9:27 a.m.)

              THE CLERK:  1:10 criminal 249, United States
versus Nathan Daniel Larson.

              MS. THOMPSON:  Good morning, Your Honor.
Carol Thompson for the United States.

              THE COURT:  Good morning.

              MS. RUPERT:  Good morning, Your Honor.
Brooke Rupert on behalf of Mr. Larson who is present.

              THE COURT:  Good morning, Ms. Rupert.

              Good morning, Mr. Larson.

              MR. LARSON:  Good morning.

              THE COURT:  Ms. Rupert, I take it you and
Mr. Larson have review the supervisory release violation?

              MS. RUPERT:  Yes, Your Honor.  We have
reviewed the petition.

              THE COURT:  And does he admits or deny the
admission?

              MS. RUPERT:  Your Honor, Mr. Larson admits
the violation.  I would, however, like to clarify a
statement within the petition.

              THE COURT:  Okay.

              MS. RUPERT:  The violation alleges
communication with two convicted felons, one by letter
and one by phone.  The clarification comes with respect

1 to the phone conversation.

2 The petition alleges that Mr. Larson and an

3 inmate discussed lying to Probation in order to get

4 through supervision.

5 I have two points of clarification. I have

6 provided a copy of the conversation yesterday. The

7 statement that Mr. Larson should lie was not said

8 explicitly. Neither parties to the conversation said

9 anything about lying.

10 The person who made the statement that could

11 potentially be construed as lying was not Mr. Larson. It

12 was another inmate.

13 Mr. Larson mentioned that he had an

14 appointment with a therapist the following day and that

15 his appointments -- that would be his first appointment,

16 that things had been delayed.

17 The other inmate said that Mr. Larson should

18 just roll with it, that he's almost done. He'll be done

19 soon. Keep the -- you know, essentially to keep the

20 finish line in mind.

21 Mr. Larson acknowledged the statement before

22 moving on to another topic.

23 THE COURT: All right, thank you.

24 Ms. Thompson, the government wants to be

25 heard in this matter?

1    MS. THOMPSON:  Your Honor, the government
2  would agree with the representation just given by defense
3  counsel and then unless Your Honor has anything further
4  that was not already said in the papers.
5    THE COURT:  Well, I just want to know if the
6  government wants to be heard earlier.  You don't have to
7  if you don't want to.
8    MS. THOMPSON:  No, response.  No, Your Honor.
9  Thank you.
10    THE COURT:  All right, thank you.
11    Ms. Rupert, let me say out loud that there
12  are several problems that I have, and I need
13  Mr. Larson -- can you hear me, Mr. Larson?
14    MR. LARSON:  Yes, sir.
15    THE COURT:  I'm concerned about Mr. Larson's
16  mental health on several levels.  Number one, the
17  original offense involves the President of the United
18  States.  That's number one.
19    Number two is concern about infatuation with
20  children and sex.
21    Number three is this website and where that's
22  headed.  What does that portend for the future, and four,
23  whether he will embrace the therapy that we're trying to
24  give him because we're all worried about future conduct.
25    I can't punishment him for what his thoughts

are, and I don't want to do that. I can't punish him for his attractions. But I have to monitor them if they're risky behavior because I have a responsibility to the public to insure that, first of all, that he's not a danger to himself or anyone else.

And so, when I read things that have been read -- set forth here, suicide by a cop, when someone hears that out loud, Mr. Larson, the first thing we think is we have someone who has a mental health problem, someone who is even thinking about suicide and then to make the police or law enforcement officer to be a part of it by getting a gun -- I can't control what you do. You probably could get a gun. I don't know.

But I worry about it. And so, when you -- when you manifested this behavior in that way, it makes me think what I got to do is protect the public and lock him up for a very, very long time.

So why shouldn't I do that?

MS. RUPERT: Your Honor, if I may consult with Mr. Larson about the statements you made before I make my --

THE COURT: Sure. Take as much as time as you need.

MS. RUPERT: Your Honor, Mr. Larson understands the Court's concerns. We submit, however,

that further incarceration is not the best way to address those concerns. Rather continued supervision is the best way to address those concerns. That way Mr. Larson can go about receiving the mental health treatment that he needs.

As the Court's aware, the Court does not have to revoke in this situation. This is not a violation that requires automatic revocation.

The Court can continue Mr. Larson on supervision, and we believe that's the best course of action.

As noted in our position paper, although there have been obstacles, Mr. Larson has faced obstacles on this go-round of supervision, he has made remarkable progress at this time. This progress has been remarked upon by his mother who is present in the courtroom today.

THE COURT: Where is his mother?

MS. RUPERT: (Indicating)

THE COURT: Okay, thank you for coming.

MS. RUPERT: She has noted a traumatic change in Mr. Larson this time. He's been much less depressed and much less angry and more helpful around the house.

Ms. Larson works and Mr. Larson has taken on a number of household chores. Ms. Larson has said that Mr. Larson has been a wonderful companion this time

around which was something she could not have said last
time.

She has been able to take Mr. Larson to visit
relatives, and she's noted that he has been able to
reconnect with old friends.  This is also different from
the previous time of supervision.

Mr. Larson has committed to attending his
mental health treatment.  During our discussion just now,
he said that he -- he takes the Court's comments to
heart.  He understands where the Court would express
concerns, but he has no intent of harming himself or
anyone else.

He will refocus and do what is required of
him, including the therapy sections.  And I will note in
the petition notes that Mr. Larson has been compliant
with the mental health treatments.  He has not missed any
sessions with the therapist or with the probation
officer.

And, the Court referenced his, I guess,
Internet project.  It's a project that he's begun.  It's
called the Inclupedia.  And like the name implies, it's
said to be an Internet encyclopedia much like Wikipedia,
however, more inclusive.

Mr. Larson, this has been a dream of his.
When speaking with Mr. Larson about this project

yesterday, you could tell that he was very excited about it.

I'm unfortunately not as technologically savvy as he is, and I was asking questions about the project. And his face lit up when he was talking about it. He describes the project as both a mirror and a supplement to Wikipedia.

It's been a dream of his to work on something like this. As someone who loves to write and likes information sharing, this project is right down his alley. He's proud to work on and he's proud to have the support of people who are willing to back him into the software programing necessary for the project.

Working towards this has given Mr. Larson a brighter outlook. The Court mentioned some concerns with other interests of Mr. Larson.

As I described in our position, I think the two convicted felons that Mr. Larson was in contact with were sex offenders.

Mr. Larson was incarcerated at FCC Petersburg, a facility that has a high concentration. So many of the people that he met there, that was their offense of conviction.

In speaking with them and during his period of incarceration, he learned about the treatment of sex

offenders by the Bureau of Prisons and as well as a
movement to revamp the sex offender guidelines and
punishment with respect to that.

Mr. Larson all along has been an avid
researcher and took to researching those issues, and I
believe that's the context that these conversations and
communications occurred in.

Mr. Larson himself has not been convicted of
those crimes and is not interested in those things beyond
intellectual research perspective.

Your Honor, Mr. Larson said yesterday that he
thought about this violation during this period of
detention.  He thought about it from all perspective.

When he communicated with these -- these
convicted felons, he had no intention of engaging in
criminal activity or furthering criminal activity.  And
so that was not his intent.

But now looking at it, he understands why the
condition is in place and agrees that he should have
sought permission before speaking -- before communicating
with those individuals.

Had he to do it over again, he would have
requested permission and we would not have been here
today.

We submit that additional incarceration is

not needed to drive home this point, Your Honor,

Mr. Larson gets the points, and he gets it loud and

clear.

And we also submit that it might be

counterproductive to Mr. Larson given his mental health

concerns and frankly given the nature of the violation

which is association with convicted felons, sending

Mr. Larson back to a facility would have him in

contact -- constant contact with convicted felons.

We believe that continued supervision,

however, is appropriate and will allow the Court to

address any rehabilitative goals of sentencing.  We

believe that's appropriate here.

If the Court wants to have additional --

additional supervision over Mr. Larson, we suggest

perhaps coming back in a month or 6 weeks for a status to

see how he's doing in the meantime.

THE COURT:  All right.  Mr. Larson, if you'd

come to the podium with your lawyer, please.

Mr. Larson, is there any statement you want

to make?

MR. LARSON:  Yes, sir.  I'm very sorry that I

didn't get permission and that I didn't abide by the

orders of my supervised release.  And I'm also very sorry

that -- about my life, the concern for alarming the Court

and my counselor.

I know that I overreacted to the situation when I was upset at some of the comments that she had made. And Mr. Keith came in and we talked about it with the counselor. And he brought to my attention, you know, those statements, you know, make the hairs on the back of people's necks stand up. And he said next time call him with my concerns and try to address it in a more constructive way. And so, I'm taking that to heart.

I apologize. I don't have any intent to harm anyone. I don't want to live the criminal lifestyle. I just want to focus on enjoying the companionship of my parents and working this project which is my dream.

I also -- I agree with what my attorney said that -- some of the things I've written on the Internet, sometimes I'll take the devil's advocate point of view. It doesn't necessarily mean that -- sometimes I'll engage in thought experiments just to see where things go. It doesn't necessarily mean that that's my fixed opinion.

And in the interview of my fellow prisoner, a lot of times, I challenge his thinking in that interview and I -- he had a very pro-pedophilic viewpoint, and I was asking him a lot of questions, you know, like how do you respond to arguments about -- how does, you know images might embarrass people later. They might feel bad

about them being out there.

So I think there might have been at least 10 or 15 questions where I was really hitting hard on those points.  And so, my goal is to benefit society.

It's -- and, I hope that the Court will give me another chance.  I want to be respectful to my counselor.  I'm committed to doing that and being cooperative.

You know the -- I've spent four days in jail this week and that's given me another taste of prison and I just really don't want to go back there.  I really want to -- I really want to be a productive member of society.

I believe I have a lot of potential.  I've been making progress.  I've been developing code, gaining confidence at it.  And I believe that the Inclupedia, this Internet company I'm building could be important for the world.

Again, I recognize that it's my fault that I'm here that -- I shouldn't -- it shouldn't have to take this to make me take seriously, you know, impact that my actions and my words cause on people.

But, you know, this arrest, this being put in jail again, you know, it's brought that home to me.  And I'm very sincere about that.  I really want to succeed. I want to get through this period of probation

1  successfully.  And I want to be truthful to my probation

2  officer, and I'm committed to doing that.

3              THE COURT:  Mr. Larson, those are all the

4  things I would hope you would say and hope you sincerely

5  believe.

6              I told your lawyer and I wanted you to hear

7  my thought process about all the information provided to

8  me and my responsibility as a judge to insure, first,

9  that you get mental health treatment, that you embrace it

10  because it will help.

11              And, we've given you some freedom somewhat.

12  It's restricted because we need to know what you're doing

13  and where you are.  And I really don't have any objection

14  to your having opinions about politics, about history,

15  about government or anything.

16              MR. LARSON:  Uh-huh.

17              THE COURT:  But when you start talking about

18  sex with children and posting pictures of children in

19  provocative poses in underwear, maybe not child

20  pornography, but it's just odd that that would be a part

21  of your website to me if your interest is to build

22  something that everybody can participate in.

23              When I look on Wikipedia, there's so much

24  information there.  You start an encyclopedia at A and go

25  to Z, pedophilia is so far down the line and pictures of

children in provocative poses is so far down the line that I'm not sure you could be there in 6 months or 8 months.

So it's just strange and it's scarey. Because I have on many Fridays people come before me who say that they were on the Internet looking for adult pornography and somehow stumbled upon child pornography and got fascinated with it.

And the federal law is five years in prison, ten years, very, very severe sentences that I'm imposing because we're concerned about people who want to traffic in and use that kind of material.

So in the back of my mind, I'm concerned about that, and I'm concerned about the suicide by cop issue. And so, it seems to me that there has to be a sanction imposed here.

And I do agree with you and your lawyer that additional treatment is necessary and additional supervision is necessary. But I want to provide additional treatment in a custodial setting.

So what I'm going to do is this. I'm going to find that you're in violation. I'm going to sentence you to 10 months in federal custody. I'm going to send you to FCI Butner. That's my recommendation to the Bureau of Prisons or a federal medical facility where you

can receive intensive psychiatric treatment.

When you're released, I'm going to keep you on supervised release for another 24 months.

Let me just say out loud. I don't want to keep you on supervised release any more than I have to. I really don't. But I'm going to extend the term for at least one year. It should be one year, for one year.

And, require when you come out that you be on GPS four or five months so we know where you're going and what you're doing.

The conditions that were previously imposed including mental health treatment remain and are amended to include not only participating in sex offender treatment and providing information to the probation officer but that you submit to polygraph testing as directed by the probation officer as part of the sex offender treatment, that you not possess and use a computer or online services without the prior approval of probation officer, including Internet service, public or private computer network.

I will allow you to participate in a computer monitoring program administered by the Probation Office which will require information to be monitored by computer software to any computer which you have access to which will monitor your activities on the Internet and

capture key strokes, e-mail, and other things.

And a notice will be placed on the computer to warn others of the existence of monitoring software.

You're not to have contact with children, female children or children -- let's say children, unless supervised by competent, informed adult approved in advance by the probation officer.

You're not to possess pornography of any kind, adult or otherwise, no pornography, period.  And you must not participant in any voluntary positions involving children.

These conditions I think are warranted.  Some sanction is warranted in hope that if you're able to come back and after 5 or 6 months and things are going well and if your probation officer thinks it's appropriate to end supervisory release, I'd be glad to do it.

MS. RUPERT:  Your Honor, we object to the imposition of further incarceration.  We also object to the additional conditions of supervision, particularly imposition of the sex offender treatment.  Mr. Larson has not been convicted of a sex offense.  We also object to the condition of the use of the computer.

THE COURT:  All right.

MS. RUPERT:  And we object to the length of the imposition of the additional incarceration.

1          MR. LARSON:  I --

2          THE COURT:  Thank you.

3          MR. LARSON:  I also -- it's my understanding

4   of 18 USC 3583 that the term of supervision that I served

5   earlier or rather the incarceration, the 24 months that I

6   served is supposed to be subtracted from the three-year

7   maximum.

8          So it's supposed to be three years minus

9   those two years.  So that's the reason why my term of

10  supervised release this time was one year.

11         And if I'm going to be serving ten more

12  months in prison, then that would also be deducted.  So

13  that would get -- provide a maximum of two extra months

14  of supervised release if I'm not mistaken.

15         THE COURT:  All right.  Well, you and your

16  lawyer can submit a written brief describing that to me.

17  And if you're right, then I'll do just what you say.  And

18  I'll hear it on any Friday.  Thank you.

19         MS. RUPERT:  Thank you, Your Honor.

20         (Proceedings concluded at 9:51 a.m.)

21

22

23

24

25

CERTIFICATE OF REPORTER

I, Renecia Wilson, an official court reporter for the United State District Court of Virginia, Alexandria Division, do hereby certify that I reported by machine shorthand, in my official capacity, the proceedings had upon the hearing in the case of United States of America vs. Nathan D. Larson.

I further certify that I was authorized and did report by stenotype the proceedings and evidence in said hearing, and that the foregoing pages, numbered 1 to 17, inclusive, constitute the official transcript of said proceedings as taken from my shorthand notes.

IN WITNESS WHEREOF, I have hereto subscribed my name this 19th day of December, 2012.

/s/
_____
Renecia Wilson, RMR, CRR
Official Court Reporter